## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

FEDERAL TRADE COMMISSION, and

STATE OF MINNESOTA, by its Attorney General, Lori Swanson,

      Plaintiffs,

      v.

SELLERS PLAYBOOK, INC., a corporation,

EXPOSURE MARKETING COMPANY, a corporation, also d/b/a Sellers Online and Sellers Systems,

JESSIE CONNERS TIEVA, individually and as an officer of SELLERS PLAYBOOK, INC. and EXPOSURE MARKETING COMPANY, and

MATTHEW R. TIEVA, individually and as an officer of SELLERS PLAYBOOK, INC. and EXPOSURE MARKETING COMPANY,

      Defendants.

CASE NO. _____

**FILED UNDER SEAL**

**PLAINTIFFS FEDERAL TRADE COMMISSION'S AND STATE OF MINNESOTA'S EXHIBITS**

**VOLUME XII**

**Px. 55 - 82**

**FTC-SP-002598 - FTC-SP-002879**

1


SCANNED
JUL 30 2018
U.S. DISTRICT COURT MPLS

# Table of Contents

| Px. # | Exhibit Description | Bates Start Range | Bates End Range |
|---|---|---|---|
| Px. 55 | W9 Form for Exposure Marketing Company | FTC-SP-002598 | FTC-SP-002599 |
| Px. 56 | FBA Stores, LLC Summary of Outside Service Expense by Payee | FTC-SP-002600 | FTC-SP-002601 |
| Px. 57 | 09/20/2017 Letter from Utah Department of Commerce to Sellers Playbook Regarding the Utah Business Opportunity Disclosure Act | FTC-SP-002602 | FTC-SP-002603 |
| Px. 58 | 10/18/2017 Letter from Matthew R. Tieva to the Utah Department of Commerce | FTC-SP-002604 | FTC-SP-002608 |
| Px. 59 | 10/24/2017 Email from Matthew R. Tieva to Utah Department of Commerce in Response to a Consumer Complaint | FTC-SP-002609 | FTC-SP-002611 |
| Px. 60 | Documents from the Utah Department of Commerce's Investigative File | FTC-SP-002612 | FTC-SP-002620 |
| Px. 61 | 08/11/2016 Email from Jessie Tieva to Adam Bowser | FTC-SP-002621 | FTC-SP-002622 |
| Px. 62 | 08/24/2016 Email from Adam Bowser to FBA Stores Team | FTC-SP-002623 | FTC-SP-002637 |
| Px. 63 | 08/31/2016 Email from Adam Bowser to Jessie Tieva | FTC-SP-002638 | FTC-SP-002639 |
| Px. 64 | 09/28/2016 Email from Alma Kelly to Jessie Tieva | FTC-SP-002640 | FTC-SP-002641 |
| Px. 65 | 10/12/2016 Email from Jeff Adams to Jessie Tieva and Adam Bowser | FTC-SP-002642 | FTC-SP-002644 |
| Px. 66 | 10/19/2016 Email from Adam Bowser to Alma Kelly | FTC-SP-002645 | FTC-SP-002649 |
| Px. 67 | FBA Stores Workshop Information for 12/2-4/2016 | FTC-SP-002650 | FTC-SP-002652 |
| Px. 68 | FBA Stores Workshop Information for 01/6-8/[2017] | FTC-SP-002653 | FTC-SP-002655 |
| Px. 69 | FBA Stores Workshop Information for 01/13-15/[2017] | FTC-SP-002656 | FTC-SP-002659 |
| Px. 70 | FBA Stores Workshop Information for 01/20-22/[2017] | FTC-SP-002660 | FTC-SP-002663 |

| Px. 71 | FBA Stores, LLC Check Paid to the Order of Exposure Marketing Company on 12/28/2016 | FTC-SP-002664 | FTC-SP-002666 |
|---|---|---|---|
| Px. 72 | FBA Stores, LLC Check Paid to the Order of Exposure Marketing Company on 01/04/2017 | FTC-SP-002667 | FTC-SP-002669 |
| Px. 73 | FBA Stores, LLC Check Paid to the Order of Exposure Marketing Company on 01/19/2017 | FTC-SP-002670 | FTC-SP-002672 |
| Px. 74 | FBA Stores, LLC Check Paid to the Order of Exposure Marketing Company on 01/24/2017 | FTC-SP-002673 | FTC-SP-002675 |
| Px. 75 | FBA Stores, LLC Check Paid to the Order of Exposure Marketing Company on 01/31/2017 | FTC-SP-002676 | FTC-SP-002678 |
| Px. 76 | FBA Stores, LLC Check Paid to the Order of Exposure Marketing Company on 02/02/2017 | FTC-SP-002679 | FTC-SP-002681 |
| Px. 77 | FBA Stores, LLC Check Paid to the Order of Exposure Marketing Company on 02/03/2017 | FTC-SP-002682 | FTC-SP-002684 |
| Px. 78 | FBA Stores, LLC Expense Report for Sellers Playbook Event on 05/05/2017 | FTC-SP-002685 | FTC-SP-002688 |
| Px. 79 | Declaration of Aileen Alontaga | FTC-SP-002689 | FTC-SP-002755 |
| Px. 80 | Declaration of Julie Chapman | FTC-SP-002756 | FTC-SP-002813 |
| Px. 81 | Declaration of Randy A. Hlavac | FTC-SP-002814 | FTC-SP-002863 |
| Px. 82 | Declaration of Reeve Tyndall | FTC-SP-002864 | FTC-SP-002879 |

# PLAINTIFF'S EXHIBIT 55

FTC-SP-002598

*Jessie Tieva*

**Form W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give Form to the
requester. Do not
send to the IRS.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**Exposure Marketing Company**

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC  ☑ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

**5290 Black Oaks Lane North**

**6** City, state, and ZIP code

**Plymouth, MN 55446**

Requester's name and address (optional)

**7** List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

| | | | – | | | – | | | | |

or

Employer identification number

| 2 | 0 | – | 0 | 6 | 3 | 8 | 1 | 0 | 4 |

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here** | Signature of U.S. person ▶ | Date ▶ 9 - 29 - 16

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding.* See *What is backup withholding?* on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued), and

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

**PLAINTIFF'S EXHIBIT 55**

**FTC-SP-002599**

FTC-FBA-S1-0012884

# PLAINTIFF'S EXHIBIT 56

FTC-SP-002600

## FBA Stores, LLC
### Summary of Outside Service Expense By Payee
From its inception to March 16, 2018
Based on the Transaction Details from its QuickBooks accounting file



**PLAINTIFF'S EXHIBIT 56**

| Name | Balance |
| --- | ---: |
| CRJ Investment Group | $ 1,380,557.16 |
| Metropolitan Housing Group, LLC | 933,836.09 |
| Timothy Hellbusch | 861,305.94 |
| ABCRE, INC. | 819,480.01 |
| Robert Schneck | 606,862.73 |
| Beacon Learning Group LLC | 492,380.94 |
| Good 2 Great LLC | 378,966.33 |
| James Leo Dotson | 368,314.19 |
| Safari Fulfillment, LLC | 351,972.00 |
| Exposure Marketing Company | 349,047.94 |
| Richard Alvarez, LLC | 343,199.62 |
| Novasors | 340,492.21 |
| Back Nine Sales Inc | 338,846.63 |
| RHSS Corp | 334,404.37 |
| Wilco Management Corp | 291,895.61 |
| Rain Makers Worldwide, LLC | 249,703.53 |
| Skyler Tolman | 247,775.00 |
| Jerry Foster | 245,149.76 |
| Trillium Management Group, LLC | 237,362.42 |
| ECN Properties, LLC | 222,649.52 |
| James Short | 215,602.79 |
| Dream Life Investments | 204,352.26 |
| Sooner Than Later LLC | 200,000.00 |
| Bow Bells Holdings, LLP | 181,297.51 |
| Tong Sam, LLC | 178,121.92 |
| Carpio Inc. | 176,465.41 |
| River City Marketing and Consulting | 171,603.55 |
| Upstart Consulting | 166,276.00 |
| Trilliant Group, LLC | 164,150.80 |
| Pinnacle Achievment | 161,942.12 |
| Clay Eschrich LLC | 156,836.58 |
| Stephen Cooper | 154,894.82 |
| Country Wide Properties LLC | 148,459.25 |
| Vanessa Caldera | 144,555.65 |
| SC Lamm and Associates, Inc | 139,925.46 |
| Marcel Buranek | 131,887.56 |
| Brittney S. Price | 130,786.21 |
| Jared Gueller | 126,740.91 |
| Seviin, LLC | 116,304.25 |
| Jake Simpson | 115,237.44 |

FTC-SP-002601

# PLAINTIFF'S EXHIBIT 57

FTC-SP-002602



# State of Utah
# Department of Commerce

GARY R. HERBERT
*Governor*

SPENCER J. COX
*Lieutenant Governor*

FRANCINE A. GIANI
*Executive Director*

THOMAS A. BRADY
*Deputy Director*

DANIEL O'BANNON
*Director, Division of Consumer Protection*

**PLAINTIFF'S EXHIBIT 57**

September 20, 2017

SELLERS PLAYBOOK
9001 SCIENCE CENTER DR
MINNEAPOLIS MN 55428

RE: BUSINESS OPPORTUNITY
Case Number: 92079

Dear Sir or Madam:

Based on the information provide to the Division of Consumer Protection, it appears that Sellers Playbook meets the definition of an assisted marketing plan under the *Utah Business Opportunity Disclosure Act,* Utah Code §13-15-2(1). Therefore, Elevate Mentoring Group LLC is required to disclosures related to its business opportunity with the Division and comply with other requirements contained in that statute.

Assisted Marketing Plan means the sale or lease of any products, equipment, supplies, or services that are sold to the purchaser upon payment of an initial required consideration of $500 or more for the purpose of enabling the purchaser to start a business, and in which the seller represents:

(iv) that upon payment by the purchaser of a fee or sum of money, which exceeds $500 to the seller, the seller will provide a sales program or marketing program that will enable the purchaser to derive income from the assisted marketing plan that exceeds the price paid for the marketing plan.

On at least one occasion, Elevate Mentoring Group, LLC has solicited a consumer to purchase a sales program or marketing program in exchange for a fee greater than $500, under the direct or implied promise that the program would enable the consumer to earn more than the amount invested.

**Consider this letter a formal demand by the Division to file the disclosures required under Utah Code § 13-15-6.**

Please be advised that failure to file disclosures within 15 days after a demand by the Division requires that the Division commence adjudicative proceedings and issue a cease and desist order. Violation of a cease and desist order from the Division carries both administrative and civil penalties.

If you feel you are exempt from the registration requirements of the *Utah Business Opportunity Disclosure Act*, please respond to this letter with your written explanation within 15 days. The full text of the relevant statute and rule are available at www.dcp.utah.gov.

Your cooperation in this matter will be appreciated. If you have any questions, contact me at (801) 530-6601 or via email at apauga@utah.gov.

Sincerely,

Ao Pauga-Investigator
**UTAH DIVISION OF CONSUMER PROTECTION**



**FTC-SP-002603**

# PLAINTIFF'S
# EXHIBIT 58

FTC-SP-002604

RECEIVED

OCT 18 2017

Division of Consumer Protection



## 9001 Science Center Drive, New Hope, MN 55428

**Delivered Via US MAIL**

State of Utah Department of Commerce
Attn: Ao Pauga - Investigator
160 East 300 South
Box 146704
Salt Lake City, Utah
84114-6704



Dear Mr. Pauga,

We are in receipt of your September 20, 2017 letter (the "Letter") alleging that Sellers
Playbook, Inc., a Minnesota corporation ("Sellers Playbook"), is an assisted marketing plan
under Utah law. Because Sellers Playbook does not meet the requirements of an assisted
marketing plan under the Utah Business Opportunity Disclosure Act, it is not required to
register thereunder.

The Letter states that "upon payment by the purchaser of a fee or sum of money, which
exceeds $500 to [Sellers Playbook], [Sellers Playbook] provides a sales program or marketing
program that will enable the purchaser to derive income from the assisted marketing plan that
exceeds the price paid for the marketing plan." This statement is inapplicable to Sellers
Playbook because the training materials and courses that Sellers Playbook provides do not
enable purchasers to derive income. Sellers Playbook simply offers training on setting up online
individual businesses, not an ongoing platform on which to run a business. To conclude that
Sellers Playbook "enables" purchasers to derive income would place every training program
under the purview of the Utah Business Opportunity Disclosure Act, which would be
unreasonable and contrary to the law's intent.

More specifically, the statute requires that assisted marketing plans enable purchasers to earn
more money than their initial investment. Sellers Playbook makes no such representations to
the purchasers of its training courses. In fact, on our website located at SellersPlaybook.com,
we expressly state that we make no guarantees about earnings under the Earnings Disclaimer
located on the bottom of the homepage. I have copy/pasted here for your convenience:

086399\001\4810472.v2

**FTC-SP-002605**

EARNINGS DISCLAIMER

Last modified: May 19, 2017

You understand and agree that there are important risk factors that should be considered by you when deciding whether to purchase any products or services from Sellers Playbook, Inc.

NO EARNINGS PROJECTIONS, PROMISES OR REPRESENTATIONS

You recognize and agree that we have made no implications, warranties, promises, suggestions, projections, representations or guarantees whatsoever to you about future prospects or earnings, or that you will earn any money, with respect to your purchase of any of our products or services, and that we have not authorized any such projection, promise, or representation by others.
Any earnings or income statements, or any earnings or income examples, are only estimates of what we think you could earn. There is no assurance you will do as well as stated in any examples. If you rely upon any figures provided, you must accept the entire risk of not doing as well as the information provided.

There is no assurance that any prior successes or past results as to earnings or income will apply, nor can any prior successes be used as an indication of your future success or results from any of the information, content, or strategies from Sellers Playbook, Inc. Any and all claims or representations as to income or earnings are not to be considered as "average earnings".

THE ECONOMY

The economy, both where you do business, and on a national and even worldwide scale, creates additional uncertainty and economic risk. An economic recession or depression might negatively affect the results produced by any of our products.

YOUR SUCCESS OR LACK OF IT

Your success in using the information or strategies provided by Sellers Playbook, Inc. depends on a variety of factors. We have no way of knowing how well you will do, as we do not know you, your background, your work ethic, your dedication, your motivation, your desire, or your business skills or practices. Therefore, we do not guarantee or imply that you will have any earnings at all. Internet businesses and earnings derived therefrom involve unknown risks and are not suitable for everyone. You may not rely on any information presented on the website or otherwise provided by us unless you do so with the knowledge and understanding that you can experience significant losses (including, but not limited to, the loss of any and all monies paid to purchase any of our products, any monies spent setting up, operating, and/or marketing any of our products or services, and further, that you may have no earnings at all).

ANY AND ALL FORWARD LOOKING STATEMENTS HERE OR ON ANY MATERIALS ON THE WEBSITE ARE INTENDED TO EXPRESS OUR OPINION OF EARNINGS POTENTIAL. MANY FACTORS WILL BE IMPORTANT IN DETERMINING YOUR ACTUAL RESULTS AND NO GUARANTEES ARE MADE THAT YOU WILL ACHIEVE RESULTS SIMILAR TO OURS OR ANYBODY ELSE, IN FACT, NO GUARANTEES ARE MADE THAT YOU WILL ACHIEVE ANY RESULTS FROM OUR IDEAS AND TECHNIQUES IN OUR MATERIAL.

DUE DILIGENCE

You are advised to do your own due diligence when it comes to making business decisions and should use caution and seek the advice of qualified professionals before making any business decisions. You should check with your accountant, lawyer, or professional advisor, before acting on this or any information. You may not consider any examples, documents, or other content on the Sellers Playbook, Inc. website or otherwise provided by us to be the equivalent of legal advice. Nothing contained on the website or in materials available for sale or download on the website provides legal advice in any way. You should consult with your own attorney on any legal questions you may have.

We assume no responsibility for any losses or damages resulting from your use of any link, information, or opportunity contained within the website or within any information disclosed by the owner of this site in any form whatsoever.

TESTIMONIALS, CASE STUDIES & EXAMPLES

Testimonials, case studies, and examples found at this website are exceptional results, do not reflect the typical purchaser's experience, don't apply to the average person and are not intended to represent or guarantee that anyone will achieve the same or similar results.

Where specific income or earnings figures are used and attributed to a specific individual or business, that individual or business has earned that amount. There is no assurance that you will do as well using the same information or strategies. If you rely on the specific income or earnings figures used, you must accept all of the risks of not doing as well. The described experiences are atypical. Your financial results are likely to differ from those described in the testimonials.

If a product or service is new, you understand that it may not have been available for purchase long enough to provide an accurate earnings history.

Please contact me at matt.tieva@SellersPlaybook.com or ▮▮▮▮▮▮▮▮ of you have any further questions.

FTC-SP-002607

Thank you,

Matthew R. Tieva - President

086399\001\4810472.v2

# PLAINTIFF'S
# EXHIBIT 59

FTC-SP-002609



**Ao Pauga <apauga@utah.gov>**

---

## RE: Complaint #92079
1 message

---

**Matt Tieva** <matt.tieva@sellersplaybook.com>       Tue, Oct 24, 2017 at 4:48 PM
To: apauga@utah.gov

Ao,

The independent contractor that made those representations was not supposed to make those representations and will no longer used because you have brought this matter to my attention. Thank you. We are not a business opportunity nor should any representations have been made otherwise.

We previously ceased selling the program in question in Utah upon receiving your notification of complaint and will continue to do so.

Again, thank you for bringing this to my attention.



Thank you,

Matt Tieva -- President

Sellers Playbook, Inc.

9001 Science Center Drive

Suite 1000

New Hope, MN 55428

Direct: ▮▮▮▮▮▮▮



The information contained in this message and any attachment may be proprietary, confidential, and privileged or subject to the work product doctrine and thus protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it and all copies and backups thereof.

**From:** Ao Pauga [mailto:apauga@utah.gov]
**Sent:** Tuesday, October 24, 2017 10:06 AM
**To:** matt.tieva@sellersplaybook.com
**Subject:** Complaint #92079

**FTC-SP-002610**

Mr. Tiera,

Thank you for your letter that we received on October 19, 2017.

I have reviewed this complaint and your response and disagreed with your explanation. I spoke with the consumers who attended the seminar in Salt Lake City on June 14, 2017. They also provided a recording of the presentation and I listened to the entire recording. The presenter made representations about money, like "100 thousand per month isn't difficult to do in this business" and "another student made 140 thousands in 3 months." He also mentioned that people could have the same life as him like having multiple homes, nice cars, boats and a plane. He said that "the majority in this room are going to make large money lots of you are going to make big money at this.

Based upon the presentation at the seminar and the testimonies by those who attended the seminar, we determined that you are selling a business opportunity. Therefore, you are required to file disclosures with our office within 15 days or cease selling the program in Utah immediately.

If you have any questions or concerns, please contact me.

Ao Pauga, Investigator

801-530-6601

801-530-6001 (fax)

apauga@utah.gov

Utah Division of Consumer Protection

160 East 300 South

Salt Lake City UT 84114

The information contained in this electronic mail message is confidential information intended only for the use of the individual or entity named above and may be privileged. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (801) 530-6601 or by replying to this email. Also please delete the original email. Thank you.

**FTC-SP-002611**

# PLAINTIFF'S EXHIBIT 60

FTC-SP-002612



Adam Watson <awatson@utah.gov>

## Sellers Playbook
1 message

**Daniel Larsen** <dblarsen@utah.gov>                                    Wed, Jun 7, 2017 at 4:30 PM
To: Adam Watson <awatson@utah.gov>

Adam,

This is the site to register for the upcoming seminar: http://thesellersplaybook.com/slcworkshop

A really quick look at google shows the company appears to be headed by Jessie Tieva. She's a former Apprentice contestant, and has been a presenter for Nudge or Zurixx in the past.

This is a copy of the registration email I received using a dummy account:





**FTC-SP-002613**

Danny, you are now listed as attending our upcoming Amazon seminar on Wednesday, June 14th at 12:30PM.

During this free event you will learn the exact steps for starting your own successful Amazon store...

Anyone can do this.

Even if you have very little money.

In fact, the biggest problem new sellers face isn't money... it's **finding suppliers.**

That's why one of the first things we'll share is our process for finding legitimate and professional suppliers in *every* niche imaginable.

Once you know how to do this, you'll be far ahead of other new sellers.

We'll see you at:

**Marriott Hotel Downtown at City Creek on Wednesday, June 14th at 12:30PM**
75 S. West Temple
Salt Lake City, UT 84101
(801) 531-0800
https://goo.gl/maps/iynRmgGljxt

Mark this on your calendar right now.

You don't want to miss this seminar.

There might not be another one for some time.

To your Amazon success,
Sellers Playbook

P.S. This works great when you do it with a friend! Click HERE to register your guest so they receive all the information you do.

P.P.S. Something come up? Can't make this time or day? You're in luck, we may have an opening at another seminar in the near future. Click HERE to reschedule or HERE to cancel your registration.

Unsubscribe

Sellers Playbook 9001 Science Center Dr Minneapolis, Minnesota 55428 United States (800) 919-2298

Daniel Larsen
Investigator
Utah Division of Consumer Protection
(801) 530-6145

FTC-SP-002614

GREG MADDOX - 1000s OF "STUDENTS
"SON ASKED HIM TO DO"  "CAN BACK UP
ANYTHING HE SAYS?"
52  NTL @ 12:37

E COMMERCE IS GREAT.

EXACT SAME LIFE AS HIM. MULTI-HOUSE, CARS,
PLANE, ETC.
FOLLOW THIS SYSTEM & IT WILL WORK

"MAJORITY IN ROOM GOING TO MAKE LARGE
MONEY" LOT OF YOU ARE GOING TO
MAKE BIG MONEY @ THIS.

LOTS OF BRAGGING ABOUT PERSONAL
WEALTH.
STUDENT MADE 140K IN 3 MONTHS
BUILT IN CREDIBILITY W/ BUYERS.
CLOSER TO 70 @ 12:50
REFERRED TO PERSON AS STUDENT.
WANT TO MAKE MONEY NOW IS THE TIME.

CLAIMS SOME TYPE OF LONG EXISTENCE
- AFFILIATION CLAIMS
+ MOST THINK THEY'LL BE SOLD A PRODUCT
- 30-45 DAYS UNTIL WE'LL HUG
  HIM
- HOW TO HAVE ANYTHING YOU WANT
  IN LIFE.
- 3 DAY PITCH-CLASS
- COACHING, SUPPORT AFTER CLASSES.
- A LOT OF WEALTHY PEOPLE MADE THIS
SEASON
- LOW RISK W/ THIS METHOD.
- IT'S NOT ABOUT COST, IT'S HOW MUCH IT WILL MAKE
      PREPPING THE FIELD - INVEST/RETURN
"ASK" IN MARCH IN VEGAS

NO RISK INVESTMENT - YOU MAKE IT
BACK IN DAYS, NOT PAYING ATTENTION

BUMP FULFILLMENT CENTERS 3-5T

$80K MONTH NOT DIFFICULT
TO DO IN THIS BUSINESS
BARRIERS
WHY? EDUCATION IS 100%
FEAR? GUARANTEED

TIME: DO THIS 1 NIGHT/WEEK

MONEY: START BUSINESS, NO MONEY — CONSIGNMENT
"BUY BOX"

KNOWLEDGE:

PRODUCT    LOCATE          PRIVATE LABEL
           INVENTORY
WELL        SUPPLIES       REBUILD LISTING
KNOWN      ASD-2020 SUPPLIERS   REVIEWS
PROFITABLE  CONSIGNMENTS   AD CAMPAIGN
AVAILABLE   OTHER SITES    PRESENTATION
SELLABLE    RETAIL ARBITRAGE  NICHE MARKET
ARBITRAGE                  DEVELOP
CALCULATE                  RELATIONSHIP

                                        HAD SELL IDEAS BROTHER
                                        FAMILY STORY
                                        2+ FOR AMAZON  LAST YEAR ONLY
                                        SOLD 2 PEOPLE

PRIVATE LABEL     ADVANTAGES
                  NO COMPETING ON BUY
LABEL             BOX
EXPEDITE          YOUR PRODUCT, YOUR BRAND
ASIN #
DEL. TO AMAZON    ENTIRE UPC FOR PRODUCT

YOUR PRICING

SCORE CREDITABLE SUPPLIERS, FAST MOVING
WINNING THE BUY BOX — 1K TO 100K
AMAZON ESSENTIALS
IMPORTANCE OF TOOLS     DAY 1 CREATE ACCT
USE OUR SYSTEM          2 - SOURCING/AUTOMATE FEAR
                        3 BRAND MARKET SUPPLIERS
    JULY 6-8 EMBASSY SUITE  WWR
    9-5  "NO RISK" "NOTHING TO LOSE"

7 MILLION SALES NOT UNCOMMON
TONS OF MONEY

NUMBERS HE'S GIVING ARE LOW BALL,
ACTUALLY A LOT BETTER



**MARRIOTT**

Greg Nagy

- cars, airplanes, multiple homes - he's here for us to be like him. Any one can buy a 6 figure car or an airplane.
- "Just follow this system."
- "Majority in this room are going to make large money"
- lot of you are going to make a lot of money ~~follow the proven system~~
- Student made $100,000 in 3 months
- 7 figures is large money
- You want to make some money this is the time to do it.
- Minimum of $10,000 to $20,000 a month
- 35 to 45 days
- "$100,000 a month is not difficult to do in this business."
★ Home in Ft Lauderdale

TRAVEL BRILLIANTLY.

FTC-SP-002617

- 100% guaranteed
- just follow the system
- One night a week
- create far more income than at J.O.B
- "Everything I say is lowball"
- Million dollars in sales is not unusual
- $1000/m to $100,000 a month by winning the buy box
- 3rd day covers marketing
- Money back after 3rd day
- Jeff quit his job in two months
- Normally $2,000 per person
  reduced $997 for 2 people
  any other time it is $2,000
- Make money back within days
- give a brand new laptop on 3rd day of class (he showed an hp)
- No fees after class
- no cut of the product
- $30-$40,000 a month very easily
-



# SELLERS PLAYBOOK
## WINNING ON AMAZON

| | | | |
|---|---|---|---|
| Name on Card: | | Exp Date: | _____ / _____ |
| Billing Address (Line 1): | | State: | |
| Billing Address (Line 2): | | Zip Code: | |
| Card Type: | ☐Visa ☐MasterCard ☐AMEX ☐Discover | Last 4 digits of card: | |
| Cardholder Signature: | | Amount: | $ 997.00 |
| Phone: | | Paid: | |
| Email: | | Bal: | |

THIS AGREEMENT ("Agreement") is made this _____ day of **June** 20 **17** ("Effective Date"), by and between **Sellers Playbook, Inc** and **the above individual or organization** ("Client"), who are together hereinafter referred to as the "Parties" or individually as a "Party." The relationship of the Parties hereto is that of independent contracting Parties.

### Three Day "Sellers Playbook, Winning on Amazon" Training:          $1997 List Price

| | |
|---|---|
| **Complimentary Guest:** | **INCLUDED** |
| **Bonus PC for attending all 3 days:** | **INCLUDED** |
| **Free Sellers Playbook Workbook:** | **INCLUDED** |
| **Free Sellers Playbook Basic Membership Site Access:** | **INCLUDED** |
| **TODAY ONLY PRICING:** | |

The undersigned each represents that they have the authority to execute this Agreement on behalf of their respective Party. Acknowledged and agreed as of the Effective Date,

**CLIENT**                                                 **SELLERS PLAYBOOK, INC.**

Authorized Signature: _____          Authorized Signature: _____

Print Name: _____          Print Name: _____

Title (if applicable): _____          Title: _____

**FTC-SP-002619**

**EXHIBIT A**

TERMS AND CONDITIONS

1. **Term.** This Agreement shall commence on the Effective Date

2. **Confidentiality.** Client and SPI each agree that all information pertaining to the other Party, obtained pursuant to the negotiation or performance of this Agreement, shall be maintained in strict confidence and shall not be released or disclosed or used for any purpose other than performance of each Party's duties, respectively, under this Agreement, except as may otherwise be agreed by the Parties in writing. Notwithstanding the foregoing, information shall not be deemed confidential if such information was in the public domain when received by the receiving Party or subsequently enters the public domain without fault of the receiving Party. Each Party and its respective affiliates, employees, consultants and agents shall take reasonable steps, by contract, instruction or otherwise, to ensure that anyone having access to the other Party's confidential information agrees to comply with the terms of this Agreement, or is put on notice of the proprietary nature of the Confidential Information, and shall not commence any legal action or proceeding which identifies the Confidential Information without the other Party's prior written consent. In the event of any inadvertent misuse, loss or disclosure of Confidential Information, or any suspicion that another party has obtained the Confidential Information by improper means, the receiving Party shall promptly notify the disclosing Party and shall provide full details of the inadvertent misuse, loss or disclosure or unauthorized possession, and use reasonable efforts to assist the disclosing Party in preventing the further misuse or reoccurrence of such misuse, loss, disclosure, unauthorized possession or otherwise, and shall take such steps as the disclosing Party may reasonably request to minimize damage arising as a result of such violation. Notwithstanding the foregoing, a Party shall not be deemed to have violated the restrictions set forth in this Section by disclosing confidential information of the other Party pursuant to a subpoena or other legal requirement of a competent governmental authority, so long as it notifies the other Party of such requirement prior to making such disclosure to allow the other Party a reasonable opportunity to take such steps as it deems appropriate to protect its confidential information. Each party hereby agrees that if a receiving Party shall violate any provision of this paragraph, the disclosing Party will incur irreparable harm which may not be compensable entirely in monetary damages. The Parties therefore agree that injunctive relief to enforce compliance with this Agreement is an appropriate remedy for breach or a threatened breach of the provisions of this paragraph, notwithstanding the fact that damages may also be recoverable for breach, and that the disclosing Party shall not be required to prove damages, post bond or meet other conditions of injunctive relief. Such remedies shall be in addition to and not in limitation of any injunctive relief or any other remedies or rights to which a Party is or may be entitled to at law, in equity or under this Agreement.

3. **SPI Intellectual Property.** SPI hereby grants to Client a terminable, non-exclusive, non-transferable right to use SPI's Intellectual Property during the Term in accordance with the terms of this Agreement. As used herein, "Intellectual Property" means any and all rights of SPI anywhere in the world under any patent(s), service mark(s), trademark(s), copyright and trade secret laws, and any other intellectual property or proprietary rights, including any moral rights and similar rights, including without limitation the IT Toolset and any guides, software, books, educational content, videos and other analytic tools relating to retail sales management, inventory management and customer data management connected to SPI's business consulting services. SPI reserves all rights in the Intellectual Property and retains title thereto and all past, present or future goodwill associated therewith, and does not convey any proprietary rights or other interest therein to Client, other than the limited rights granted hereunder. Client acknowledges that the Intellectual Property contains information that has been created, developed and maintained by SPI at substantial expense of time and money such that misappropriation or unauthorized use by others for commercial gain would unfairly and irreparably harm SPI, and Client therefore agrees not, during or after the Term, to engage in any conduct, directly or indirectly, which would infringe upon, harm or contest the rights of SPI in the Intellectual Property, or any goodwill associated therewith or attributable thereto, or do or permit to be done any act or thing in derogation of any rights of SPI in connection therewith. Client agrees that it shall not represent that it has acquired any ownership or equitable rights in the Intellectual Property by virtue of the limited rights granted hereunder, and shall not oppose or challenge in any way any ownership rights of SPI in, or the registration of or application for, or the validity of the Intellectual Property. Neither the Client nor its authorized users and/or affiliates shall have the right to amend, modify, decompile or reverse engineer the Intellectual Property, or to create derivative works without the prior written consent of SPI.

4. **Warranty; Disclaimer; Limitation of Liability.** SPI warrants that it has the right to provide to the Client access to its proprietary tools such as the IT Toolset in accordance with the terms of this Agreement. SPI does not warrant that the IT Toolset or its content will be uninterrupted or error-free, secure from unauthorized access, that defects will be corrected or that SPI's servers are free of viruses or other harmful components. SPI relies on third party data and APIs for its IT Toolset, and the loss or poor quality of that data shall not entitle the Client to any sort of remedy. SPI makes no other warrantees or guarantees, whether express or implied, beyond those specifically and expressly provided for in this Agreement. Except to the minimum extent required by applicable law and then only to that extent, in no event will SPI be liable to Client for any incidental, direct, indirect, punitive, actual, consequential, special, exemplary, punitive or other damages as a result of any breach of this Agreement including, without limitation, loss of revenue or income, loss of profits, pain and suffering, emotional distress, cost of substitute goods or services, or similar damages suffered by Client or any third party that arise in connection with SPI's Services (or the termination thereof for any reason). Client further understands and agrees that in no event shall SPI's cumulative liability for any claim arising in connection with this Agreement, regardless of the form of action, exceed the amount of total fees and charges actually paid to SPI hereunder.

5. **Indemnification.** Client hereby agrees to indemnify, defend and hold harmless SPI from and against any and all loss, expenses, damages, and costs, including without limitation reasonable attorney's fees, resulting, whether directly or indirectly, from: (a) Client's violation of any provision of this Agreement; (b) claims brought by third parties arising out of Client's use of the IT Toolset or Services and content Client makes available via the IT Toolset or Services by any means, including without limitation through email, posting, weblink, reference to content, or otherwise, whether by Client or a third party using Client's password; (c) any wrongful disclosure of password(s) by any Client employee, agent or representative; or (d) any actual or alleged wrongful, negligent or unauthorized access, modification, disclosure, publication, copying or use of any IT Tool or website by any Client employee, agent or representative. As a condition of Client's use of the IT Toolset, Client waives and releases SPI from all liability to Client, and further agrees to indemnify and hold SPI harmless against any losses, costs or damages incurred or caused by Client.

6. **Data Release Authorization.** Client hereby gives authorization to SPI to release client data to a third party who needs the information to assist SPI in providing the services contemplated herein and to any third-party client designates by either requesting enhanced services or enters into an agreement directly with the third party. Client agrees to indemnify and hold SPI harmless from and against all claims, suits, demands, actions, proceedings and litigation relating to usage of client's data after it has been transferred by SPI to a third party. SPI shall take reasonable steps to ensure any third party receiving the client data to assist SPI in providing the services has agreed to keep the client data confidential.

7. **Negotiated Rates.** From time to time, SPI may negotiate with third party service providers, which SPI may offer to Clients. For such service, SPI's offer to the Client may result in a fee being paid to SPI if the Client enters in to a relationship with the Third-Party Service Provider. This fee belongs to SPI.

8. **Governing Law; Severability.** This Agreement shall be governed by the laws of the State of Minnesota, except its conflict of laws rules. If any provision of this Agreement is held unenforceable, then such provision will be modified to reflect the Parties' intention. All remaining provisions of this Agreement shall remain in full force and effect.

9. **Dispute Resolution.** Both Parties to this Agreement waive any and all right to a trial by jury. Any dispute or controversy arising under or in connection with this Agreement, including claims of fraud in the inducement, shall be settled exclusively by binding arbitration solely by written submission in Hennepin County, in the State of Minnesota, in accordance with the expedited Commercial rules of the American Arbitration Association then in effect, by one arbitrator. Limited civil discovery shall be permitted for the production of documents and taking of depositions. Unresolved discovery disputes may be brought to the attention of the arbitrator who may dispose of such dispute. Judgment may be entered on the arbitrator's award in any court having jurisdiction. The arbitrator shall have the authority to award any remedy or relief that a court of this state could order or grant; provided, however, that punitive, consequential or exemplary damages shall not be awarded. (a) Arbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others. The arbitrator's authority to resolve and make written awards is limited to claims between Client and SPI alone. Claims may not be joined or consolidated unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. (b) The above notwithstanding, this Section shall have no application to claims by SPI seeking to enforce, by injunction or other equitable relief, the terms of this Agreement. Such claims may be maintained by SPI in a court of competent jurisdiction.

10. **Cancelation.** To cancel a sale, provide written notification with your signature and date to Sellers Playbook, Inc. at 9001 Science Center Drive, Minneapolis, MN 55428. The envelope must be post-marked before midnight of the third business day after the contract effective date. Saturday is considered a business day; Sundays and federal holidays are not. Your Kindle is to be returned in new, unopened condition or you will be charged $97. If you have opened it, you may replace it with a different unopened Kindle provided it is new and in retail packaging. All return shipping costs are by the Clint.

11. **Survival.** Any provision of this Agreement which imposes an obligation after termination or expiration of this Agreement shall survive the termination or expiration of this Agreement.

12. **Mutual Non-Disparagement Covenant.** Client hereby agrees that it will not, at any time, directly or indirectly, make any oral or written public statements that are disparaging of SPI, SPI's products or services, or any of SPI's present or former owners, employees or independent contractors. SPI (limited to its officers and directors) agrees that it will not, at any time, directly or indirectly, make any oral or written public statements that are disparaging of Client. Disparagement shall be defined as any oral or written public statements that impugn the qualities, character, honesty, integrity, morality, business acumen or abilities of the subject.

13. **Force Majeure.** Neither Party shall be liable for any delay or failure in performance of any part of this Agreement during any period in which such Party cannot perform due to actions beyond the control of the Party.

14. **Entire Agreement; Modification.** This Agreement and the Exhibit(s) attached hereto constitute the entire agreement between the Parties hereto and supersede all prior and contemporaneous agreements and undertakings of the Parties pertaining to the subject matter hereof. This Agreement may not be modified except by written instrument duly executed by the Party hereto against whom the modification is sought to be enforced except as noted otherwise.

15. **Notice.** All notices sent via electronic document shall be deemed to have been given, made, or communicated as the case may be, at the time that the notice is sent by electronic document at the email addresses of the Parties set forth on the signature page to this Agreement.

16. **Execution by Electronic Signature.** The Parties expressly agree that scanned documents shall have the same force and effect as original signed documents, provided that either Party may require the other Party also to exchange original signed documents.

17. **Headings.** The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

18. **Waiver.** SPI's failure to exercise or delay in exercising any right, power or privilege under this Agreement shall not operate as a waiver; nor shall any single or partial exercise of any right, power or privilege preclude any other or further exercise thereof.

19. **Assignment.** Client may not assign any of Client's rights or obligations under this Agreement to anyone else. SPI may assign its rights to any other individual or entity at SPI's discretion.

FTC-SP-002620

# PLAINTIFF'S EXHIBIT 61

FTC-SP-002621

Thanks Adam. Great speaking to you today. I'm looking forward to seeing your operation. The website is great too.

Thanks!

Jessie

On Aug 11, 2016, at 8:40 PM, Adam Bowser <abowser11@gmail.com> wrote:

> Jessie,
>
> It was a pleasure talking with you today and I hope we can make things work and have you part of our great team. I've attached a document with all 3 of our coaching offers (Diamond, Platinum & Gold) that we sell at our 3 days. This details out what they get with each program and should give you a good idea what we're offering. Feel free to send me any questions you have along the way. Talk soon.
>
> **Costs for each program**
>
> Diamond $34995
> Platinum $19995
> Gold $9995
>
>
> --
> Adam Bowser
> FBA Stores
> 293 Libbey Pkwy
> Weymouth MA 02189
> 800-554-8495
> www.fbastores.com
>
> <FBA Stores 3 Coaching Packages.docx>



PLAINTIFF'S
EXHIBIT
**61**

1

# PLAINTIFF'S EXHIBIT 62

FTC-SP-002623

| | |
|---|---|
| **From:** | Adam Bowser <abowser11@gmail.com> |
| **Sent:** | Wednesday, August 24, 2016 10:10 AM |
| **To:** | Jessie Tieva; andria.finau@gmail.com |
| **Subject:** | Fwd: Email 1 PPT - Day 1 9-1030 |
| **Attachments:** | Day1-9to1030.pptx |

---------- Forwarded message ----------
From: **Tim Hellbusch** <hellbusch.tim@gmail.com>
Date: Thu, Aug 4, 2016 at 10:45 PM
Subject: Email 1 PPT - Day 1 9-1030
To: Adam Bowser <abowser11@gmail.com>, **Tim Hellbusch** <thellbusch@msn.com>

Adam,
The files are big so I broke them down so they would fit. There will be 7 emails.

Tim


--
Adam Bowser
FBA Stores
293 Libbey Pkwy
Weymouth MA 02189
800-554-8495
www.fbastores.com



PLAINTIFF'S
EXHIBIT
**62**

**FTC-SP-002624**