# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and | Civil No. 18-2207 (DWF/TNL) |
| STATE OF MINNESOTA, by its Attorney General, Lori Swanson, | |
| Plaintiffs, | |
| v. | **STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT** |
| SELLERS PLAYBOOK, INC., a corporation, | |
| EXPOSURE MARKETING COMPANY, a corporation, also d/b/a Sellers Online and Sellers Systems, | |
| JESSIE CONNERS TIEVA, individually and as an officer of SELLERS PLAYBOOK, INC. and EXPOSURE MARKETING COMPANY, and | |
| MATTHEW R. TIEVA, individually and as an officer of SELLERS PLAYBOOK, INC. and EXPOSURE MARKETING COMPANY, | |
| Defendants. | |

Plaintiffs, the Federal Trade Commission ( "FTC"), and the State of

Minnesota, by its Attorney General Lori Swanson ("State of Minnesota"), filed

their Complaint for Permanent Injunction and Other Equitable Relief

("Complaint"), in this matter, pursuant to Sections 13(b) and 19 of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Business Opportunity Rule, 16 C.F.R. Part 437, the Consumer Review Fairness Act of 2016 ("CRFA"), 15 U.S.C. § 45b, Minnesota Statutes chapter 8, the Minnesota Attorney General's common law authority, including *parens patriae* authority, the Minnesota Uniform Deceptive Trade Practices Act ("DTPA"), Minn. Stat. §§ 325D.43-.48, and the Minnesota Prevention of Consumer Fraud Act ("CFA"), Minn. Stat. §§ 325F.68-.694. Plaintiffs and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendants participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the Business Opportunity Rule, 16 C.F.R. Part 437, the Consumer Review Fairness Act of 2016, 15 U.S.C. § 45b, the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-.48, and the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. §§ 325F.68-.694, in connection with the advertising, marketing, distribution, promotion and sale of goods and services, including business opportunities, to consumers throughout the United States.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.     Defendants waive and release any claims that they may have against Plaintiffs and the Receiver, including against any agent of Plaintiffs or the Receiver, that relate to this action.

5.     Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     **"Business Coaching Program"** means any program, plan, good, or service, including those related to business opportunities, that is represented, expressly or by implication, to coach, train or teach a participant or Purchaser how to establish, operate, or improve the Purchaser's business.

B.     **"Business Opportunity"** means a commercial arrangement in which:

1.     A Seller solicits a prospective Purchaser to enter into a new business; and

2.     The prospective Purchaser makes a required payment; and

3.     The Seller, expressly or by implication, orally or in writing, represents that the Seller or one or more Designated Persons will:

(i)     Provide locations for the use or operation of equipment, displays, vending machines, or similar devices, owned, leased, controlled, or paid for by the Purchaser; or

(ii)    Provide outlets, accounts, or customers, including Internet outlets, accounts, or customers, for the Purchaser's goods or services; or

(iii)   Buy back any or all of the goods or services that the Purchaser makes, produces, fabricates, grows, breeds, modifies, or provides, including providing payment for such services as, for example, stuffing envelopes from the Purchaser's home.

C.     **"Corporate Defendants"** means Sellers Playbook, Inc., Exposure Marketing Company, also doing business as Sellers Online and Sellers Systems, and their successors and assigns.

D.     **"Covered communication"** means a written, oral, or pictorial review, performance assessment, or other similar analysis, including by electronic means, of goods, services, or conduct.

E.     **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

F.     **"Designated Person"** means any Person, other than the Seller, whose goods or services the Seller suggests, recommends, or requires that the Purchaser use in establishing or operating a new business.

G.     **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements (including advertisements placed on the World Wide Web), FTP Logs, Server Access Logs, USENET Newsgroup postings, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases, and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

H.     **"Earnings Claim"** means any oral, written, or visual representation to a consumer, prospective purchaser or investor that conveys, expressly or by implication, a specific level or range of actual or potential sales, or gross or net income or profits.  Earnings claims include, but are not limited to, any:  (1) chart, table, or mathematical calculation that demonstrates possible results based upon a combination of variables; and (2) statements from which a consumer, prospective purchaser or investor can reasonably infer that he or she will earn a minimum level of income (e.g., "earn enough to buy a Porsche," "earn a six-figure income," or "earn your investment back within one year").

I.     **"Individual Defendants"** means Jessie Conners Tieva and Matthew R. Tieva.

J.     **"Person"** means a natural person, organization, or legal entity, including a corporation, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

K.     **"Pictorial"** includes pictures, photographs, video, illustrations, and symbols.

L.     **"Prohibited contract provision"** means a standard contract provision used in the course of selling or leasing goods or services that:

1.      prohibits or restricts the ability of a person who is a party to the contract to engage in a covered communication;

2.      imposes a penalty or fee against a person who is a party to the contract for engaging in a covered communication; or

3.      transfers, or requires a person who is a party to the contract to transfer, to any other person any intellectual property rights in a covered communication, with the exception of a non-exclusive license to lawfully use a covered communication about a Defendant's goods, services, or conduct.

M.      **"Providing locations, outlets, accounts, or customers"** means furnishing the prospective Purchaser with existing or potential locations, outlets, accounts, or customers; requiring, recommending, or suggesting one or more locators or lead generating companies; providing a list of locator or lead generating companies; collecting a fee on behalf of one or more locators or lead generating companies; offering to furnish a list of locations; or otherwise assisting the prospective Purchaser in obtaining his or her own locations, outlets, accounts, or customers.

N.      **"Purchaser"** means a Person who buys a Business Opportunity or Business Coaching Program.

O.     **"Receiver"** means Robb Evans & Associates LLC, the receiver appointed in Section XII of the Temporary Restraining Order issued on Monday July 30, 2018 [ECF No. 29] and whose appointment was extended in the Order Extending the Duration of the Temporary Restraining Order and Postponing Preliminary Injunction Hearing issued on August 7, 2018 [ECF No. 39], and whose appointment is continued in Section VII of this Order, and any deputy receivers that shall be named by Robb Evans & Associates LLC.

P.     **"Receivership Estate"** means the assets identified in Section IV.B of this Order and all assets of the Corporate Defendants, including:  (a) any assets of the Corporate Defendants currently in the possession of the Receiver; (b) all the funds, property, premises, accounts, documents, mail, and all other assets of, or in the possession or under the control of the Corporate Defendants, wherever situated, the income and profits therefrom, all sums of money now or hereafter due or owing to the Corporate Defendants, and any other assets or property belonging or owed to the Corporate Defendants; (c) any assets of the Corporate Defendants held in asset protection trusts; (d) any reserve funds or other accounts associated with any payments processed on behalf of any Corporate Defendant, including such reserve funds held by a payment processor, credit card processor, or bank; and (e) all proceeds from the sale of such assets, except those assets the sale of which the Receiver determines will not add appreciably to the value of the estate.

Q.    **"Seller"** means a person who offers for sale or sells a Business Opportunity or Business Coaching Program.

## ORDER

## I.    BUSINESS OPPORTUNITY AND BUSINESS COACHING BAN

**IT IS ORDERED** that Defendants are permanently restrained and enjoined from advertising, marketing, distributing, promoting, or offering for sale, or assisting in the advertising, marketing, distributing, promoting, or offering for sale of, any Business Opportunity or Business Coaching Program.

## II.    PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service are permanently restrained and enjoined from:

A.    making any Earnings Claim, unless the Earnings Claim is non-misleading, and, at the time such claim is made, Defendants:  (1) have a reasonable basis for their claim; (2) have in their possession written materials that substantiate the claim; and (3) make the written substantiation available upon request to the consumer, potential Purchaser or investor, and to the FTC and State of Minnesota; or

B.     misrepresenting or assisting others in misrepresenting, expressly or by implication any other fact material to consumers concerning any product or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

### III.   INJUNCTION AGAINST SUPPRESSING COVERED COMMUNICATIONS THROUGH PROHIBITED CONTRACT PROVISIONS

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from offering, attempting to enforce, or asserting the validity of, any prohibited contract provision.  Nothing in this Section shall:  require a Defendant to publish or host the content of any person; affect any other legal duty of a party to a contract; or affect any cause of action arising from the breach of such duty.

### IV.   MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.     Judgment in the amount of Twenty Million Eight Hundred Fifty-one Thousand Nine Hundred Twenty-seven Dollars ($20,851,927.00) is entered in

favor of Plaintiffs against Defendants, jointly and severally, as equitable monetary relief.

B.    Immediately upon entry of this Order, Defendants are ordered to surrender to Plaintiffs all control, title, dominion, and interest each has to the following assets:

1.    All interest the Defendants have in funds in any accounts in the name of the Corporate Defendants;

2.    All cash held by the Receiver;

3.    All assets owned by the Corporate Defendants, including any real, personal, or intellectual property, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail, or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables, insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Corporate Defendants;

4.    All funds held by Fidelity Bank in the name of Exposure Marketing Company, including the account ending in 6438;

5. All funds held by Fidelity Bank in the name of Sellers Playbook, Inc., including the accounts ending in 5846, 2858, and 2946;

6. All funds held by Charles Schwab & Co. Inc. in the name of Exposure Marketing Company, including the account ending in 8057;

7. All funds held by Hiway Federal Credit Union in the name of Exposure Marketing Company, including the accounts ending in 201-1 and 201-2;

8. All funds held by Horizon Trust in the name of Sellers Playbook, Inc.;

9. All reserve funds or any other accounts held, controlled, or serviced by Electronic Merchant Systems and associated with any payments processed by, or on behalf of Sellers Playbook, Inc., including the merchant account with the MID ending in 0871;

10. All reserve funds or any other accounts held, controlled, or serviced by PayPal, Inc. and associated with any payments processed by, or on behalf of Sellers Playbook, Inc., including the merchant accounts ending in 0161, 3420, and 4287;

11. All reserve funds or any other accounts held, controlled, or serviced by Qualpay and/or Synovus Bank and associated with any payments processed by, or on behalf of Sellers Playbook, Inc.;

12. All reserve funds or any other accounts held, controlled, or serviced by Qualpay and/or Synovus Bank and associated with any payments processed by, or on behalf of Exposure Marketing Company;

13. All reserve funds or any other accounts held, controlled, or serviced by Square, Inc. and associated with any payments processed by, or on behalf of Sellers Playbook, Inc., including the merchant accounts ending in 8JCJ, N9FQ, and T1ZN;

14. All reserve funds or any other accounts held, controlled, or serviced by Unified Payments and associated with any payments processed by, or on behalf of Sellers Playbook, Inc.;

15. Forty-nine and a half percent (49.5%) of the shares or ownership interest in Northland Mechanical Contractors, Inc.;

16. Thirty-three point three percent (33.3%) of the membership interest or ownership interest in Science Center Drive LLC;

17. Matthew Tieva's shares or ownership interest in, or right to any distribution as a beneficiary of the Tieva Northland Mechanical Contractors 2007 Irrevocable Trust and/or the Matthew Tieva Northland Mechanical Contractors 2007 Irrevocable Trust;

18. The real property, including the land, buildings and fixtures, located at 135 Century Ave., St. Paul, Minnesota, 55419;

19. The real property, including the land, buildings and fixtures, located at 12130 29th Ave. N, Plymouth, Minnesota, 55441;

20. The funds held by Charles Schwab & Co. Inc. in the name of Matthew Tieva, in the accounts ending in 2782 and 8057;

21. The funds held by Charles Schwab & Co. Inc. in the name of Matthew Tieva and Jessie Conners Tieva, in the account ending in 8494;

22. The funds held by Hiway Federal Credit Union in the name of Jessie Conners Tieva, in the account ending in 149-1;

23. The funds held by US Bank in the name of Matthew Tieva and Jessie Conners Tieva, in the account ending 7326;

24. All funds held by PayPal in the name of Matthew Teiva, including the account ending 8784; and

25. The promissory notes issued by Advanzeon Solutions, Inc., payable to Jessie Conners Tieva.

26. All funds, including the $129,423.43, held in escrow by Land Title, Inc. pursuant to the Disbursing Agreement dated April 27, 2018, by and among Premier Bank, Land Title, Inc., Matthew R. Tieva and Jessie C. Tieva.

C. To the extent they are not already in the possession of the Receiver, Defendants shall deliver the assets identified in Subsection B above to the Receiver's possession within 7 days of the entry of this Order. Defendants shall cooperate fully with the Receiver and take such steps as the Receiver may require in Receiver's sole and absolute opinion and judgment, including executing any documents and providing any necessary information, to cause the transfer to the Receivership Estate of legal and equitable title to the property and assets identified in Subsection B above.

D. Except for the lists of consumer names and customer information identified in Section V below, the Receiver shall, as soon as practicable, commence the sale of the unliquidated assets identified in Subsection B above and surrendered pursuant to this Order using a commercially reasonable procedure. The Receiver shall hold the surrendered assets, and the proceeds from the sale of

the unliquidated assets, for future transfer in accordance with further instructions from the Court.

E.    Upon delivery of all the assets specified in Subsection B above to the Receiver, the remainder of the judgment is suspended, subject to Subsections F-O below.

F.    Plaintiffs' agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related Documents (collectively, "financial representations") submitted to Plaintiffs, namely:

1.    the Financial Statement of Individual Defendant Jessie Conners Tieva signed on August 7, 2018, including the attachments;

2.    the Financial Statement of Individual Defendant Matthew R. Tieva signed on August 7, 2018, including the attachments;

3.    the Financial Statement of Corporate Defendant Sellers Playbook, Inc., signed by Matthew R. Tieva, President, on August 7, 2018, including the attachments;

4.    the Financial Statement of Corporate Defendant Exposure Marketing Company signed by Jessie Conners Tieva, President, and Matthew R. Tieva, Vice President, on August 7, 2018, including the attachments.

G.      The suspension of the judgment will be lifted as to any Defendant if, upon motion by Plaintiffs, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

H.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury and unjust enrichment alleged in the Complaint), less any payments previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

I.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

J.      The State of Minnesota through this Order does not settle, release, or resolve any claim against Defendants or any other person or entity involving any private causes of action, claims, and remedies including, but not limited to, private causes of action, claims, or remedies provided for under Minn. Stat. § 8.31.

K.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the FTC or the State of Minnesota, including in a proceeding to enforce their rights to any

payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

L.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the FTC or the State of Minnesota pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

M.    Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

N.    All money paid to Plaintiffs or assets ultimately surrendered to Plaintiffs, pursuant to this Order (or any subsequent Court order issued in this matter) and further instructions from the Court, may be deposited into a fund administered by the FTC or its designee on behalf of both the FTC and the State of Minnesota.  This fund shall be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the FTC decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, any money not used for such equitable relief shall be divided equally between the FTC and the State of Minnesota, with half to be deposited to the U.S. Treasury, and half to be

deposited to the State of Minnesota's General Fund, as disgorgement. Defendants have no right to challenge any actions Plaintiffs or their representatives may take pursuant to this Subsection.

O.    The asset freeze imposed by the July 30, 2018 Temporary Restraining Order [ECF No. 29], is modified to permit the payment and transfers identified in Subsections IV.B above. Upon completion of those payment and transfers, the asset freeze as to Defendants is dissolved.

## V.    CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, and their representatives, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.    Failing to provide sufficient customer information to enable the FTC to efficiently administer consumer redress. Defendants represent that they have provided this redress information to the FTC. If a representative of the FTC requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the FTC, within 14 days.

B.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, e-mail address, social security number, other identifying information, or any data that enables access to a customer's account

(including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the advertising, marketing, distribution, promotion, and sale of business opportunities to consumers throughout the United States; and

C.      Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the FTC.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VI.    COOPERATION

**IT IS FURTHER ORDERED** that Defendants must fully cooperate with representatives of the FTC and the State of Minnesota in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.  Defendants must provide truthful and complete information, evidence, and testimony.  Individual Defendants must appear and Corporate Defendants must cause Corporate Defendants' officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that an FTC or State of Minnesota representative may reasonably request upon 5 days written notice, or other reasonable notice, at such

places and times as an FTC or State of Minnesota representative may designate, without the service of a subpoena.

## VII.   RECEIVERSHIP

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLC is hereby appointed equity Receiver for the Corporate Defendants for the purpose of taking the necessary steps to wind down the businesses of the Corporate Defendants, liquidate assets, and pay any net proceeds to Plaintiffs to satisfy the monetary judgment in this Order.  In carrying out these duties, the Receiver shall be the agent of this Court, shall be accountable directly to this Court, and is authorized and directed to:

A.     Take any and all steps that the Receiver concludes are appropriate to wind down the affairs of the Corporate Defendants.

B.     Continue to exercise full control over the Corporate Defendants and continue to collect, marshal, and take custody, control, and possession of all the funds, property, premises, accounts, documents, mail, and other assets of, or in the possession or under the control of the Corporate Defendants, wherever situated, the income and profits therefrom, and all sums of money now or hereafter due or owing to the Corporate Defendants.

C.     Continue to have full control over the management and personnel of the Corporate Defendants.

D.    Take all steps necessary or advisable, including issuing subpoenas, to locate and liquidate all other assets of the Corporate Defendants, cancel the Corporate Defendants' contracts, collect on amounts owed to the Corporate Defendants, and take such other steps as may be necessary to wind-down the Corporate Defendants efficiently.

E.    To the extent not already completed, the Receiver shall as soon as practicable after the entry of this Order, take exclusive custody, control, and possession of all assets identified in Section IV.B of this Order.

F.    The Receiver shall give reasonable notice to Plaintiffs of any settlements or compromises by the Receiver concerning the Receivership Estate, before the settlement or compromise is consummated.  Within 20 days of this notice, the FTC and the State of Minnesota shall have the opportunity to object to any such settlement, by filing a motion with the Court.

G.    Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Corporate Defendants prior to the date of entry of the temporary restraining order in this action, except payments that the Receiver deems necessary or advisable to ensure assets of the Corporate Defendants are not lost, stolen, or dissipated.

H.     Institute actions or proceedings in state, federal, or foreign courts as the Receiver deems necessary and advisable to preserve or recover the assets of the Corporate Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers.

I.     Defend any or all actions or proceedings instituted against the Corporate Defendants, as the Receiver deems necessary and advisable to preserve the assets of the Corporate Defendants.

J.     Continue to maintain accurate records of all receipts and expenditures incurred as the Receiver.

K.     Perform all acts necessary or advisable to complete an accurate accounting of assets of the Receivership Estate, and prevent unauthorized transfer, withdrawal, or misapplication of said assets.

L.     Continue to be entitled to reasonable compensation for the performance of the Receiver's duties pursuant to this Order, including duties performed by the Receiver's agents, including accountants and lawyers, and for the cost of actual out-of-pocket expenses incurred by them, from the assets of the Receivership Estate, at the hourly rate previously agreed to by the Receiver and used as the bases for prior fee applications approved by the Court.

## VIII.  RECEIVER'S FINAL REPORT AND DISBURSEMENTS

**IT IS FURTHER ORDERED** that:

A.     No later than 180 days from the date of the entry of this Order, the Receiver shall file and serve on the parties a report (the "Final Report") to the Court that details the steps taken to dissolve the Receivership Estate.  The Final Report must include an accounting of the Receivership Estate's finances and total assets and a description of what other actions, if any, must be taken to wind down the Receivership.

B.     The Receiver shall mail copies of the Final Report to all known creditors of the Corporate Defendants with a notice stating that any objections to paying any assets of the Corporate Defendants to satisfy the Receiver's costs and expenses and the monetary judgment set forth in this Order must be submitted to the Court and served by mail upon the Receiver and the parties within twenty-eight (28) days of the mailing of the Final Report.

C.     No later than fourteen (14) days after submission of the Final Report, the Receiver shall file an application for payment of compensation and expenses associated with his performance of his duties as Receiver.

D.     The Court will review the Final Report and any objections to the report and, absent a valid objection, will issue an order directing that the Receiver:

1.　　Pay the reasonable costs and expenses of administering the Receivership, including compensation of the Receiver and the Receiver's personnel authorized by Section VII of this Order or other orders of this Court and the actual out-of-pocket costs incurred by the Receiver in carrying out his duties;

2.　　Pay all remaining funds to the Plaintiffs or their designated agent to reduce the monetary judgment in Section IV.

E.　　With Court approval, the Receiver may hold back funds for a specified period as a reserve to cover additional fees and costs related to actions to be addressed in a supplemental application.  If the Receiver does not make a supplemental application for fees and expenses within the specified period, or if funds remain in the reserve funds after the payment of fees and expenses approved by the Court in response to such a supplemental application, all funds in the reserve funds shall be immediately paid to the Plaintiffs or their designated agents.

F.　　Any and all uncollected judgments obtained for the benefit of the Corporate Defendants shall be assigned to the Plaintiffs for further collection efforts.

## IX.　ORDER ACKNOWLEDGEMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant, within 7 days of entry of this Order, must submit to Plaintiffs an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 10 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, partners, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X.     COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to Plaintiffs:

A.     One year after entry of this Order, each Defendant must submit a

compliance report, sworn under penalty of perjury:

1.     Each Defendant must:  (a) identify the primary physical, postal,

and e-mail address and telephone number, as designated points

of contact, which representatives of the FTC or the State of

Minnesota may use to communicate with Defendant;

(b) identify all of that Defendant's businesses by all of their

names, telephone numbers, and physical, postal, e-mail, and

Internet addresses; (c) describe the activities of each business,

including the goods and services offered, the means of

advertising, marketing, and sales, and the involvement of any

other Defendant (which Individual Defendants must describe if

they know or should know due to their own involvement);

(d) describe in detail whether and how that Defendant is in

compliance with each Section of this Order; and (e) provide a

copy of each Order Acknowledgment obtained pursuant to this

Order, unless previously submitted to the FTC and the State of

Minnesota.

2.     Additionally, each Individual Defendant must:  (a) identify all

telephone numbers and all physical, postal, e-mail and Internet

addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.   For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.   Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.   Additionally, each Individual Defendant must report any change in:  (a) name, including aliases or fictitious name, or

residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to Plaintiffs notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to Plaintiffs required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by an FTC representative in writing, all submissions to the FTC pursuant to this Order must be e-mailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The

subject line must begin:  FTC v. Sellers Playbook, et al., X180026.  Unless

otherwise directed by a State of Minnesota representative in writing, all

submissions to the State of Minnesota pursuant to this Order must be mailed to:

Frances L. Kern, Assistant Attorney General, Minnesota Attorney General's

Office, 445 Minnesota Street, Suite 1200, St. Paul, Minnesota, 55101.

## XI.    RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records

for 20 years after entry of the Order, and retain each such record for 5 years.

Specifically, Corporate Defendants and each Individual Defendant for any business

that such Defendant, individually or collectively with any other Defendants, is a

majority owner or controls directly or indirectly, must create and retain the

following records:

A.    Accounting records showing the revenues from all goods or services

sold;

B.    Personnel records showing, for each person providing services,

whether as an employee or otherwise, that person's:  name; addresses; telephone

numbers; job title or position; dates of service; and (if applicable) the reason for

termination;

C.    Records of all consumer complaints and refund requests, whether

received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC or State of Minnesota; and

E.      A copy of each unique advertisement or other marketing material.

## XII.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the FTC or the State of Minnesota, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce Documents for inspection and copying.  The FTC and the State of Minnesota are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the FTC and the State of Minnesota are authorized to communicate directly with each Defendant. Defendant must permit representatives of the FTC and the State of Minnesota to

interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. The FTC and the State of Minnesota may use all other lawful means, including posing, through their representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the FTC's or the State of Minnesota's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, and Minnesota Statutes section 8.31 *et seq.*, respectively.

D. Upon written request from a representative of the FTC or the State of Minnesota, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

### IT IS SO ORDERED:

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge

Dated: November 20, 2018

32

**STIPULATED AND AGREED TO BY:**

**FOR DEFENDANTS:**


s/Barbara Berens                                    Date: 10/1/18
Barbara Berens
Minnesota Attorney # 0209788
Berens & Miller P.A.
80 South 8th Street, Suite 3720
Minneapolis, MN 55402
Tel.
E-mail: bberens@berensmiller.com

Attorney for Defendants Sellers Playbook, Inc.,
Exposure Marketing Company, Matthew R. Tieva,
and Jessie Conners Tieva


**DEFENDANTS:**


s/Jessie Conners Tieva                              Date: Oct. 1st, 2018
Jessie Conners Tieva, Individually and
as an officer of Sellers Playbook, Inc., and
Exposure Marketing Company


s/Matthew R. Tieva                                  Date: 10/1/18
Matthew R. Tieva, Individually and
as an officer of Sellers Playbook, Inc., and
 Exposure Marketing Company

**FOR FEDERAL TRADE COMMISSION:**


s/Roberto Anguizola                                    Date:  November 19, 2018
Roberto Anguizola
Illinois Attorney # 6270874
(Admitted *pro hac vice*)
Tel. (202) 326-3284
E-mail: ranguizola@ftc.gov

Claire Wack
Maryland Attorney # 1312190275
(Admitted *pro hac vice*)
Tel. (202) 326-2836
E-mail: cwack@ftc.gov

Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Drop CC-8528
Washington, DC 20580

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**FOR STATE OF MINNESOTA:**


s/Frances L. Kern                                    Date:  11.19.18
Frances L. Kern
Minnesota Attorney # 0395233
Assistant Attorney General
Minnesota Attorney General's Office
445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
(651) 757-1373 (voice)
(651) 296-7438 (fax)
(651) 297-7206 (TTY)
E-mail: Frances.Kern@ag.state.mn.us

Attorney for Plaintiff
STATE OF MINNESOTA